## Case No. 194.

### The ALICE TAINTER.

[5 Ben. 391;[1] 15 Int. Rev. Rec. 40.]

District Court, S. D. New York. Nov. 1871.[2]

MARITIME LIENS—SUPPLIES—HOME PORT.

A bark owned by American citizens, resident in New York, was put into the name of a British subject and under a British register, after which she was sold by the American owners to a firm, also resident in New York, one member of which was an Austrian subject, but neither of the members was a British subject, the title, however, being put into the name of another British subject. This firm kept possession of the vessel for some time, and finally sold her. During this period C. furnished supplies to the vessel, on the order of her master, in New York, whom C. had known a long time. C. did not know who owned the vessel, and made no inquiries. He afterwards filed a libel against the vessel, to recover for the supplies. *Held*, that the vessel was really in her home port when the supplies were furnished, and was not really a foreign vessel, as regarded the rights of the libellant, and that he had no lien on the vessel for the supplies.

[In admiralty. Libel in rem by James E. Chase against the bark Alice Tainter for supplies. Libel dismissed with costs. Affirmed by the circuit court in The Alice Tainter, Case No. 195.]

Scudder & Carter, for libelant.

Beebe, Donohue & Cooke, for claimant.

BLATCHFORD, District Judge. The libel in this case alleges, that, between the 24th of October, 1867, and the 26th of December, 1867, while the bark Alice Tainter was lying at the port of New York, she was in want of certain supplies and provisions, to enable her to proceed upon any voyage and earn freight; that her master applied to the libellant, and requested him to furnish to the bark such supplies and materials as she stood in need of; that thereupon, and between the dates before named, at the city of New York, the libellant furnished to the bark materials and supplies of the value of $1,938.50, all of which were necessary for the bark; that bills therefor were rendered to the master and approved by him, but no part of the sum has been paid; and that

[1][Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2][Affirmed by the circuit court in The Alice Tainter, Case No. 195.]

the libellant has a maritime lien on the vessel therefor. The libel does not allege that the vessel was a foreign vessel, or a vessel in a foreign port, at the time the materials and supplies were furnished, or that they were furnished on the credit of the vessel. It alleges that the vessel is a foreign vessel, speaking as of the date the libel was sworn to and filed, which was the 11th of December, 1869.

The answer admits, that, during the times mentioned in the libel, the libellant furnished certain supplies and provisions, and that the same were necessary for the bark. It sets up, that the bark is an American built bark, and has been, at all times, in truth, owned by American citizens; that, at the times mentioned in the libel, Slocovich & Smith, residents of the state of New York, and merchants doing business in the city of New York, were the real owners of the bark; that that fact was well known to the libellant, and the supplies and provisions were furnished upon their credit; that the bark was sailing under a British register; that, to give her nationality, she was nominally placed in the name of the claimant, one Armstrong, a British subject, then and ever since residing and doing business in the city of New York; that, since the furnishing of the supplies and provisions, and before the commencement of this suit, the bark had performed a voyage to Europe, Japan, back to Europe, and thence back to the United States; and that this court has no jurisdiction of this suit.

The history of the bark, as shown on the trial, was this: She was built in New York for the firm of Smith & Dunning, a firm doing business in New York, and whose members resided there or in Brooklyn. They owned the bark, the title to her being in the name of Mr. Smith, of that firm. That firm continued in possession of her until they actually sold her, October 22d, 1867. Meantime, and on the 21st of April, 1863, Mr. Smith, of that firm, conveyed her, by bill of sale, to one Duck, a British subject, residing in New York, and she was put under the British flag, and furnished with a British register. Smith & Dunning sold her, on the 22d of October, 1867, to the firm of Slocovich & Smith, a firm composed of two members, both of whom resided in New York. That firm carried on business in New York. They negotiated for her purchase with Smith & Dunning, and accounted to them for her purchase money. None of the members of the firms of Smith & Dunning and Slocovich & Smith were British subjects. Slocovich was an Austrian subject. On the purchase by Slocovich & Smith, Duck, on the 22d of October, 1867, by a bill of sale, executed by Smith, of the firm of Smith & Dunning, as his attorney, the power of attorney from Duck to Smith being dated September 21st, 1864, conveyed the vessel to the claimant, Armstrong, who was a British

subject, residing and doing business in New York. At all times after such conveyance, until February 11th, 1870, when Slocovich & Smith sold the vessel, she continued in their possession, employed by · them in trade. They sent her on a voyage to Rotterdam, thence to China, Japan, Cork, Amsterdam, and New York. On the 11th of February, 1870, they sold her, and Armstrong conveyed her, ·by bill of sale, to one Adey, a British subject.

The only testimony as to the furnishing of the supplies to the vessel is that given by the libellant himself. He says that he was not on board of her, and did not know by whom she was owned; that he supplied the goods to her by the order of her master, with whom he had been a long time acquainted; that the master happened in at his, the libellant's, store, and told him, the libellant, that he, the master, was appointed to the command of the vessel, and thought he could give him, the libellant, the order for fitting her out; and that subsequently the master gave him, the libellant, the order, and he filled it.

It is impossible, on the facts in this case, to hold that the libellant has any lien on this vessel, which can be enforced in a suit in admiralty against her, in rem. She was, in fact, in her home port, when the supplies were furnished, and not in a foreign port, nor was she then really a foreign vessel, as regards the rights of the libellant in reference to her in respect of these supplies, however it might be necessary to regard her as a British vessel in respect of any rights claimed by her as against the United States, as a sovereign power. Nor is this a case where she was held out by her real owners as a foreign vessel, or a vessel in a foreign port, in such wise as to deceive or mislead the libellant to his prejudice. He does not testify that he supposed she was a foreign vessel or a vessel in a foreign port. or that he furnished the supplies on the credit of the vessel, or gave credit for them to the vessel. On the contrary, he says that he did not know by whom she was owned. He does not show that he inquired of the master, or of any other person, where or by whom the vessel was owned, or whether she was in her home port or in a foreign port.. The master did not come to him as a stranger or a foreigner, in command of a foreign vessel. On the contrary, he had been acquainted with the master for a long time. Moreover, the fact that the master, happening in at the libellant's store, told him that he was appointed to command the vessel, and thought he could give him the order for fitting her out, must be regarded as a sufficient indication that he had been appointed master then recently by parties at hand, to put the libellant to inquiring, at least, from the master, where the vessel really belonged and who were her real owners.

There is not in this case the slightest indication that the libellant had any idea that he was furnishing the supplies to a foreign vessel, or to a vessel in a foreign port, or on the credit of the vessel, or that he was obtaining a security on the vessel by furnishing them. I must, therefore, dismiss the libel, with costs.