## Case No. 11,237.

### The PLYMOUTH ROCK.

[13 Blatchf. 505.] [1]

Circuit Court, E. D. New York.   Aug. 16, 1876. [2]

MARITIME LIENS—SUPPLIES—EFFECT OF OWNER'S RESIDENCE UPON CHARACTER OF VESSEL — ENROLLMENT—NECESSITY FOR THE SUPPLIES.

1. A new Jersey corporation owned a steamboat which was enrolled in the port of New York. She ran as a passenger boat between the city of New York and Long Branch, in New Jersey, making several trips a day each way. Supplies of food were furnished to her in New York, on her credit, such supplies not being absolutely necessary for the passengers or crew, but being useful and convenient. Some of the food was consumed by the employés of the vessel, but the larger part was dispensed at a restaurant on board, to passengers, who paid for what they ordered. Held, the enrollment of the vessel at New York did not make her a domestic vessel there, but she was a vessel in a foreign port, while in New York, because her owner did not reside at New York.

[Cited in The Rapid Transit, 11 Fed. 330; Chisholm v. The J. L. Pendergast, 32 Fed. 416; The Havana, 54 Fed. 202, 64 Fed. 496.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirming Case No. 11,235.]

2. There was sufficient necessity for the supplies to furnish a basis for a lien on the vessel, and the fact that they were dispensed to passengers from a restaurant furnishes no ground for alleging that such necessity did not exist.

[Cited in Harney v. The Sydney L. Wright, Case No. 6,082a; Bovard v. The Mayflower, 39 Fed. 42.]

3. A lien on the vessel for such supplies was created.

.[Followed in The Metropolis, Case No. 9,503; The Long Branch, Id. 8,484.]

[Appeal from the district court of the United States for the Eastern district of New York.]

In admiralty.

Beebe, Wilcox & Hobbs, for libellant.

Dudley Field, for claimant.

HUNT, Circuit Justice. During the summer of the year 1873, the New Jersey Southern Railroad Company was the owner of the steamer Plymouth Rock. This vessel was run as a passenger boat between the city of New York and Long Branch, New Jersey, making several trips back and forth each day, and occupying an hour and a quarter in making a trip from dock to dock. The vessel was run by and in the interest of the said railroad company, which was an incorporation organized by and under the laws of the state of New Jersey, having its office and doing business in that state.

During the months of July, August and September, 1873, the libellant Fuller furnished to said vessel, and on its credit, at the city of New York, stores and supplies for food, consisting of butter, ham, and other articles of food, which were received and consumed on board the said steamer. The goods furnished were used partly in the support of the crew of said vessel and of the attendants thereon, and in part were dispensed from a restaurant on board said vessel, to the passengers thereon. Much the larger portion was used in the manner last mentioned. The sales from the restaurant were intended as sources of profit to the owners of the vessel, and the supplies were useful and convenient to the passengers and to the crew of said vessel. The trips were so short and the landings so frequent that such supplies were not absolutely necessary either to the passengers or the crew.

1. It is objected to the recovery, that the vessel was in her home port, and that there was, therefore, no lien for supplies furnished to her. The claimant insists that the character of the vessel, in this respect, is determined by her register and enrolment. Hence, there is produced a bill of sale from a former owner, containing a certificate of the enrolment of the vessel in the port of New York, and a new certificate of enrolment in that port, obtained by such new owner, the present claimant. Several authorities are produced upon either side, which I have duly considered. As I feel no hesitation in holding that the character of a vessel, as to its

being a foreign or a domestic vessel, is determined by the place of residence of its owner, and not by the place of its enrolment, I do not deem it necessary to discuss the authorities. 1 Pars. Shipp. & Adm. p. 43, note; The Lulu, 10 Wall. [77 U. S.] 198, 199.

2. It is insisted, that these supplies were not necessary, and, hence, that there is no lien. "Necessity" is a relative term. By the uniform construction of the courts, much latitude is given in this respect. What is necessary for a packet ship to Liverpool or Havre, carrying passengers who pay the highest price and expect a table to be liberally supplied, may not be necessary for a vessel carrying coal or lumber, with crews working at low wages and accustomed to plain fare. But, in each case, no doubt, a lien may exist for the articles supplied. The Lulu, supra.

I do not see that the fact of the dispensation of the supplies from a restaurant, i. e. to individuals as called for, and to be paid for by such individuals, rather than that the passenger should be charged a passage price intended to include a charge for meals furnished, makes any difference. If a British steamer is about to sail for London with a crew of fifty men, and one hundred passengers, she must be provided with the means of feeding them. She must lay in the needed supplies in advance, ascertaining what will be needed. Whether she charges a passenger one hundred dollars and furnishes him a state room, and a seat at a general table well provided with food, or whether she charges him fifty dollars for his state room, and furnishes him meals to be paid for when and as he requires them, can be of no importance. No man can make the voyage without food, and, if it is supplied by the ship's company, the particular manner in which it is dispensed cannot be of importance. It certainly cannot be competent for the ship's owner to allege, that, for such reason, the articles purchased on its account are not necessary supplies.

3. It is strenuously urged, also, that the maritime lien for supplies furnished to a foreign vessel does not apply to a case like that before us, that of a ferry-boat between two points near at hand. If the rule does apply here, it must apply to the ferry-boats making their trips half-hourly between New York and Jersey City. These boats cross a space of perhaps a mile in width, and the boats are hourly at hand to respond to the liability imposed by the local law.

A lien is given for supplies furnished to a foreign vessel, which is denied in the case of a domestic vessel, for obvious reasons. In the latter case, the necessity for the lien does not exist, because the owner is understood to be present, and, by his personal credit and by giving liens himself on the vessel, he can procure everything to which his own credit or the value of his vessel properly entitles him. In the former case, the vessel is un-

derstood to be absent from her owner. She is a rover. She has reached a strange port, where her owner is unknown. Her voyage is unfinished, and, unless she can obtain supplies, she must lie where she is, a loss to every one. If her master has no funds in hand, the voyage must fail and his vessel must be a total loss, unless the vessel itself can furnish the means of extrication. These are the theories upon which the lien is given; and while, in practice, there have been modifications in many particulars, and while it is not intended to say that these are necessary conditions, they are, nevertheless, the foundation of the rule. The Grapeshot, 9 Wall. [76 U. S.] 136, 141; The Kalorama, 10 Wall. [77 U. S.] 212; The Lulu, Id. 197; The Lottawanna, 21 Wall. [88 U. S.] 558.

It is difficult to justify the application of this rule to a vessel that never goes to sea, and is never out of sight of her port of departure, and that is every hour of the day within the reach of the local process of the state in which the supplies are furnished. Were the question before me as an original one, I should be much inclined to take the view of the claimant, and to hold that the lien did not exist in a case like the present. It appears, however, that the decision under review is, in this respect, in accordance with the holdings of the courts of the Southern and Eastern districts of New York. The Neversink [Case No. 10,133]. Until the question shall be presented to a higher tribunal, it would not be becoming in me to hold otherwise, and I, therefore, overrule the objection under consideration. The furnishing of the supplies, and that they were upon the credit of the vessel, is reasonably established.

The judgment of the district court is affirmed.