## Case No. 195.

### The ALICE TAINTER.

[14 Blatchf. 41.][1]

Circuit Court, S. D. New York.  Nov. 11, 1876.[2]

SHIPPING—LIEN FOR SUPPLIES—HOME PORT—FOREIGN REGISTRY.

An American built vessel, really owned by residents of New York, was put under the British flag by a formal transfer to a British subject, and was registered in a British port. Afterwards, supplies were furnished to her in New York, by a person who was not misled as to her character: *Held*, that there was no maritime lien on the vessel for the supplies.

[Appeal from the district court of the United States for the southern district of New York.]

[In admiralty. Libel in rem by James E. Chase against the bark Alice Tainter for supplies. Decree for claimant dismissing the libel in the Alice Tainter, Case No. 194. Libelant appeals. Affirmed.]

Scudder & Carter, for libelant.

Welcome R. Beebe, for claimant.

JOHNSON, Circuit Judge.  The controlling question in this case is, whether the fact that this vessel was put under the British flag by a formal transfer to a British subject, recorded at the British consulate in New York, and by being registered at Hamilton, in the island of Bermuda, although she was really owned by Smith & Dunning, her original owners, and continued to be controlled by them until they sold her to Slocovich & Smith, just before the supplies in question were furnished, converted her into a foreign vessel, so as to subject her to a maritime lien for supplies. That the vessel lost her right to the protection of the government of the United States, by the transaction stated, and that, so far as the revenue laws are concerned, she had no longer any claim to be considered an American vessel, is quite clear. But all this may be without her being subjected, as a foreign vessel, to a maritime lien for supplies. In respect to that question, the residence of the owners, and not the place of registry or enrolment, controls. The Plymouth Rock, [Case No. 11,237.] I do not find, upon the evidence, that the libellant was misled in any way in respect to the character of the vessel. He seems to have known her history very well, except that he did not know

---

[1][Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

her owners at the time, nor did he make any inquiry about them. He knew Captain Nichols, who used to come into his office, and who, when he got charge of this vessel, told the libellant that he thought he could give him the order for her supplies, and subsequently did so. The libellant testifies that he knew she was under the British flag when he furnished the supplies, and that he furnished them on the credit of the vessel. But this neither makes out that the vessel was not in her home port, nor that he was misled about her in any respect, unless it was in the idea that this change of her colors had caused New York to cease to be her home port. I do not find that the cases to which I am referred support the libellant's view of the law. In most, if not in all, the question presented assumed the vessel to be in a foreign port, and then the inquiry was whether the other circumstances would support a maritime lien. This was clearly so in The Patapsco, 13 Wall. [80 U. S.] 329, in The Grapeshot, 9 Wall. [76 U. S.] 129, in The Guy, Id. 758, in The Lulu, 10 Wall. [77 U. S.] 192, and also in The Walkyrien, [Case No. 17,092; Id. 17,091.] In the latter case, the attempt was, though the vessel was foreign, to defeat the maritime lien on the ground that the foreign owner was a resident of New York, and this the court refused to do; while, on the other hand, in the early case of The St. Jago De Cuba, 9 Wheat. [22 U. S.] 409, it was held, that, even in a home port, a vessel may be subjected to the liabilities of a vessel in a strange port, by being falsely held up as foreign by her owners, but that, in such a case, the question is, whether there was an imposition practised, under circumstances calculated to deceive and mislead men of ordinary vigilance.

Entertaining these views of the law, I think the decree of the district court in 5 Ben. 391, [The Alice Tainter, Case No. 194,] was correct, and that the further testimony presented in this court has not altered the position of the case in any material and controlling respect. The decree must be affirmed and the libel dismissed.