### THE MARY K. CAMPBELL.

·MACY v. REMNANTS, ETC., OF THE MARY K. CAMPBELL and another.

*(Circuit Court, S. D. New York.   July 7, 1887.)*

1. MARITIME LIEN—WHARFAGE.
    · It is essential, in order to create a lien for wharfage, that the contract be made by some person who has authority to pledge the vessel to the performance of the contract.

2. SAME—VESSEL UNDER ATTACHMENT—MORTGAGE.
    Where a vessel is brought to the wharf by the sheriff, under attachment in a suit in a state court against a part owner, the wharfinger will not obtain a lien on the vessel, or proceeds of her sale, superior to the lien of a mortgage which is prior to the attachment.

January 3, 1887, Gustaf Werner and others, seamen on the bark Mary K. Campbell, filed their libel in the district court, Southern district, New York, against said bark, her tackle, etc., praying for her condemnation to pay libelants' claims. No 'claim being filed by the owners, the bark was duly sold by the marshal for $3,800, which was paid into the registry of said district court.

After the payment of all liens as ascertained under the direction of said district court, there remained the sum of $2,390.33. January 27, 1887, the appellant filed his petition praying that said remnants and surplus should be paid over to him as mortgagee of said bark, under a mortgage for $5,000 executed by James Maguire, sole owner of said vessel, November 23, 1886, and duly recorded; and said district court directed that it be referred to a commissioner to take proofs of the facts. January 28, 1887, the appellees filed their petition in the said district court, praying that a certain claim of said appellees for wharfage, alleged to be a lien upon said bark incurred while she was in the custody of the sheriff of the city and county of New York, under attachments issued in certain actions in the supreme court of the state of New York against the owners, should be paid out of said remnants and surplus; and the district court directed that it be referred to a commissioner to take proof of the facts. The commissioner made his report, awarding the appellees the sum of $99.19 to be paid out of said remnants and surplus, to which report the appellant filed exceptions, which were overruled; and a final decree was made that the appellees recover against the said remnants and surplus the sum of $99.19, together with the costs as taxed, and that said claim have precedence over the appellant's mortgage.

It was stipulated, for the purposes of the controversy in this action, that on the twenty-third day of November, 1886, James Maguire, the sole registered owner of the bark Mary K. Campbell, her tackle, etc., executed and delivered to James Gibb Ross a mortgage, in consideration of the sum of $5,000 actually advanced on or about that day. The home port of said vessel was Quebec, Canada, and the said mortgage was duly recorded in the custom-house, Quebec, on the twenty-fifth day of November, 1886; that certain creditors of the firm of D. & J. Ma-

guire, alleged by said creditors to be composed of James and Charles Maguire, the said James being the said mortgagor, caused the vessel to be seized by the sheriff of New York county, under process of foreign attachment, in actions to enforce payment of certain notes and drafts made by the said D. & J. Maguire, upon dates partly prior and partly subsequent to the date of said mortgage; that possession of said bark was voluntarily relinquished by the said sheriff to the marshal of this court, under stipulation, on or about the third day of January, 1887, but without knowledge of said wharfingers, and she was sold for the sum of $3,800 under process *in rem*, upon action for seamen's wages, which have been paid, and there now remains in the registry of this court the sum of $2,390.33; that the said firm of D. & J. Maguire became bankrupt on or about the fifth day of December, 1886; that no part of said mortgage has been paid. It is expressly stipulated that in the event of the judgment of the district court herein being reversed, the wharfingers, Macy and Hitchcock, still reserve the right to require proof in the district court of the due execution and delivery of the mortgage, and that it is still due and unpaid. The fund shall remain in this court pending decision on the appeal.

*Samuel B. Clarke*, for appellee.

*Geo. Bethune Adams*, for appellant.

WALLACE, J. The result of the decree of the district court is to subordinate the lien of the mortgage of a vessel upon the proceeds in the registry of the court to the subsequent lien of a creditor who brought suit in a state court against one of the joint owners of the vessel, and in that suit caused an attachment to be levied upon the vessel by the sheriff of the city and county of New York. This singular and anomalous result has been worked out through a supposed lien upon the vessel, acquired by a wharfinger to whose wharf the vessel was taken by the sheriff under the attachment. The wharfinger knew that the vessel was in charge of the sheriff when she was brought to and while she remained at the wharf. Although wharfage is a maritime contract which creates a maritime lien in favor of the wharfinger against the vessel, it is essential to an hypothecation that the contract be made by some person who has authority to pledge the vessel to the performance of the contract. Very clearly a sheriff who has seized the vessel upon legal process, and resorts to a wharf in order to tie her up, and prevent her from completing her voyage, has no such authority. There is nothing in the state statute (Consolidation Act, Laws 1882, *c.* 410, § 798) which, in terms or by implication, makes the vessel liable when she is brought to the wharf on legal process, and is while there in the custody of the law.

The wharfinger could not acquire any lien upon the vessel, and consequently could not upon the proceeds in the registry, unless he did so by the act of the sheriff who brought the vessel to the wharf, and kept her there. In this behalf the sheriff was merely the agent of the attaching creditor. Consequently, if it be assumed that the wharfinger could acquire any interest in the proceeds in the nature of an equitable lien, it

could not rank above the lien of the attaching creditor, but should rank as one derived under the attachment. It represents nothing more than the right of the attaching creditor to include in his recovery against the joint owner whose interest was attached, the expenses of the wharfage as part of the costs or taxable expenses of the suit. If the vessel had been sold on final process in the suit in which the attachment issued, the right of the mortgagee to take possession and exercise his power of sale under the mortgage would not have been impaired. The purchaser on the execution sale would have acquired an interest which would have permitted him to redeem upon tendering the mortgage debt, but the sale could not have prejudiced the mortgagee, or deprived him of the security of the vessel to the full extent of the mortgage debt. Certainly the mortgagee is in no worse plight under the stipulation by which the vessel was sold, and her proceeds brought into the district court, than he would have been if she had been sold upon an execution in the suit of the attaching creditor. The wharfinger must look to the sheriff personally for the wharfage, and the sheriff must look to the attaching creditor. There is no hardship in requiring the wharfinger to look for his wharfage to the person who brought the vessel to his wharf. Although there is an implied license to vessels upon navigable waters to use such structures in the manner and for the purposes contemplated by their erection, the wharfinger may terminate this general license, or may withhold permission to a particular person. *Heaney* v. *Heeney*, 2 Denio, 625; *Swords* v. *Edgar*, 59 N. Y. 28.

Inasmuch as the proceeds of the sale in the registry were not sufficient to satisfy the lien of the mortgage, the decree of the district court, in effect, compelled the mortgagee to pay the claim of the attaching creditor against one of the joint owners of the vessel, to the extent of his expenses for wharfage.

The decree of the district court is reversed, with costs of the district court and of this court, to be paid by the appellee.