## CHISHOLM *v.* THE J. L. PENDERGAST.

*(Circuit Court, S. D. New York.* July 20, 1887.)

MARITIME LIEN—WAGES OF MASTER—FOREIGN VESSEL.

The libelant, a United States citizen, made a contract with P., also a citizen, to act as master of the bark J. L. P. P. was the real owner of the bark, although she was built in Quebec, carried the British flag, and was registered in the name of a British subject; and he was in possession as owner under a mortgage and irrevocable power of attorney. The libelant did not know the J. L. P. was of British register until a fortnight after the contract was made. *Held,* that the libelant dealt with P. as owner, and that, as between the parties, the bark was an American vessel, and that therefore libelant did not acquire a lien for wages under the British merchant shipping act of 1854, § 191, which could be enforced *in rem;* reversing decision of district court. See *The J. L. Pendergast,* 29 Fed. Rep. 127.

*James Parker,* for appellants.
*C. C. Burlingame,* for appellee.

WALLACE, J. The libelant sues *in rem* to recover a balance of wages due him as master of the bark Pendergast, claiming a lien by the British "Merchant Shipping Act" of 1854 (section 191) upon the theory that the bark was a British vessel. The district court decreed in his favor, and the owners of the bark have appealed.

The libelant, who is a citizen of this country, made a contract, at the city of New York, to act as master of the bark, with J. L. Pendergast, who was also a citizen of this country residing at New York city. Pendergast was the real owner of the bark; the vessel having been built for him, and paid for by him, at Quebec. She was registered at that port in the name of James G. Ross as owner, and carried the British flag; but Ross had transferred her by bill of sale to one Adey, a British subject, who was in the employment of Pendergast, and Adey had executed a mortgage for her full value to Pendergast, with an irrevocable power of attorney, vesting in the latter power to sell and absolute control of the vessel. Pendergast was in possession as the real owner.

The libelant testifies that when he made the contract with Pendergast he supposed Pendergast to be acting as agent for Ross, the registered owner. The district judge gave credit to this testimony, and the decree of the district court proceeded upon the assumption that it was true. The evidence taken in this court shows that this testimony was untrue, and that the libelant did not know who was the owner of the bark until July 31, 1884, when he went to the British consul to have himself indorsed as master on the ship's register, and then for the first time saw the register, and saw by it that Ross was the owner. He had made the contract to serve as master with Pendergast over a fortnight before this. It is wholly improbable that he supposed Mr. Pendergast, whose name the vessel bore, was the agent for an unknown owner. The case must be decided upon the theory that he dealt with Pendergast as owner.

Although the bark was registered as a British vessel, and carried the

British flag, the libelant was not misled by this *prima facie* evidence of her nationality, but dealt with Pendergast as owner, at Pendergast's place of residence, supposing him to be the owner. As to the libelant, the bark was an American, and not a British, vessel. *The Alice Tainter*, 14 Blatchf. 41; *The Plymouth Rock*, 13 Blatchf. 505. The contract having been made here, and being one for services to be performed on a vessel which, as between the contracting parties, was an American vessel, has only those incidents which exist by the general maritime law as recognized in this country, and not those which are created by the law of Great Britain. Consequently the contract did not imply a lien upon the ship for the master's wages.

The decree of the district court is reversed, and the libel is dismissed, with costs of this court and of the district court.