## THE ALGONQUIN.

(District Court, S. D. New York. February 24, 1898.)

SUPPLIES—EQUITABLE OWNER—HOME PORT—BONA FIDE SALE.

Supplies were furnished to the yacht A. at Boston on the order of the master appointed by the equitable owner, C., who was in possession and who resided in Boston, Mass. The legal title was still held by W. of New York, the vendor, as security for a part of the unpaid purchase money. The material man had no knowledge of W. or his interest in the yacht, and dealt only with C. and his master, and after knowledge of all the facts also, he delayed several months in filing the libel: *Held* (1) that there was no maritime lien; (2) if there was, it was lost by laches as against a bona fide purchaser.

This was a libel in rem by John Morrison against the steam yacht Algonquin to enforce an alleged lien for supplies.

Convers & Kirlin, for libelant.

Cowen, Wing, Putnam & Burlingham, for claimant.

BROWN, District Judge. Under the contract of sale, Carter was equitable owner of the yacht and in possession, running her for his own account, and with no power to bind Watson, the holder of the legal title. Carter was a resident of Boston; the yacht was there, and that was the actual home of the yacht. Watson, a resident of Rochester, N. Y., merely held the legal title as a mortgagee might hold it, as security only for the unpaid portion of the purchase money. The supplies furnished by the libelant were ordered by Carter's master, and not by the master of any foreign owner; and the libelant was referred to Carter for payment, and collected a prior bill from Carter. The libelant had no knowledge of Watson, or of his nominal legal title, and the yacht was not in any way represented to be a foreign vessel. Being, however, foreign built, she was not entitled to registry, enrollment or license; and she had no ship's papers whatever, but the libelant was ignorant of this fact. She bore no foreign name, nor did she fly any foreign flag; and when the libelant supplied the coal he had no reason to suppose that she belonged to any one else than to Carter, to whom he was referred for payment. The libelant made no inquiries, and was in no way misled.

In the case of Weaver v. The S. G. Owens, 1 Wall. Jr. 359, 29 Fed. Cas. 489, Mr. Justice Grier says:

"As between the parties and those who dealt with the vessel, and where the national character is not in dispute, a person rightfully in possession, navigating the vessel for his own use and profit by officers and mariners appointed and employed by himself, will be considered the special owner, whether he be lessee, mortgagee, or parol vendee, notwithstanding some other person may be the registered owner and have the so-called legal title and general ownership in himself."

On this ground it was there held that a maritime lien could not be sustained, the home of the special owner being considered as "the home port of the vessel." The same principle was involved in the decision of The J. L. Pendergast, on appeal to the circuit court, 32 Fed. 415. See, also, The Alice Tainter, 14 Blatchf. 41, Fed. Cas. No. 195;

The Plymouth Rock, 13 Blatchf. 505, Fed. Cas. No. 11,237; The Island City, 1 Low. 375, Fed. Cas. No. 7,109.

The decision in The Island City was not overruled by Judge Lowell in the subsequent case of The George T. Kemp, 2 Low. 477, Fed. Cas. No. 5,341, but some of its general statements were qualified. In this latter case a decision opposite to the ruling in The Alice Tainter, supra, seems to have been reached, and a maritime lien upheld; but this was upon the ground that the parties had deliberately put the vessel into a foreign ownership for the purpose of obtaining the benefits of the foreign law and of flying a foreign flag which were held to be representations of her character. In the present case no such elements exist; and in any event, I should follow the adjudications of the circuit court in this circuit.

The case seems to be entirely within the class described by Mr. Justice Grier and the other cases above cited. I must hold this yacht, therefore, to be equitably and for all practical purposes as respects supplies, a Massachusetts vessel. The libelant had at hand all possible means of inquiry to acquaint him with the facts; and several months before the sale of the vessel to Mr. Webb, a bona fide purchaser, the libelant was made acquainted with the substantial facts, and yet took no measures to enforce any supposed lien against the yacht. Had Carter been a charterer of the vessel, instead of a vendee in possession, it would be impossible, I think, under the other circumstances stated, to maintain a maritime lien against the vessel, since the decision of the supreme court in the case of The Valencia, 165 U. S. 264, 17 Sup. Ct. 323. The same principles would seem to preclude the libelant from treating the vessel as foreign.

2. If it were otherwise, however, and a lien deemed originally acquired, I think the libelant should be held to have lost it by laches as against Webb, a bona fide purchaser from Carter. This sale was not made until seven months after the supplies in question were furnished. During all this time the yacht was mostly in Boston, and the libelant had abundant means of proceeding against her had he desired to do so. Long before the sale to Webb, the libelant had express information that Carter was the equitable owner. When Webb purchased of Carter, he caused all reasonable inquiries to be made for any liens or incumbrances, and was assured there were none. In truth, these facts, and some expressions in the testimony of Anderson, go far to sustain the inference that the supplies were not furnished to the yacht upon the credit of the vessel, notwithstanding the fact that the bill was made out as usual to the ship and owners, but in reliance alone upon the general responsibility of yacht owners.

The libel must be dismissed.