### KJAER & ISDAHL et al. v. ETIER.

(Circuit Court of Appeals, Fifth Circuit. April 14, 1915.)

No. 2680.

SHIPPING ⊝80—LIABILITY OF VESSEL—INJURY TO CARETAKER.

Libelant's husband, while employed as caretaker of a freight steamer in the custody of the marshal, was killed by falling through the trap or opening in the floor of the fidley leading to the stokehold. It was dark, the doors of the fidley were open, and there was no railing around the opening. It was shown that, while there was a railing around three sides in some vessels, it was not usual in vessels of such class. Deceased had been employed by the marshal in such service for several years and was familiar with vessels. Held, that the owners, not being in posses-.sion and not having invited deceased on board, owed him only ordinary care, and were not shown to be negligent; that they were not liable for the open doors, or absence of lights, which were matters to be attended to by the marshal and his employé.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 106; Dec. Dig. ⊝80.]

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

---

⊝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in admiralty by Marie Etier against Kjaer & Isdahl and the National Surety Company. Decree for libelant, and respondents Kjaer & Isdahl appeal. Reversed.

This is an appeal from a decree in favor of Marie Etier, appellee, and against Kjaer & Isdahl, appellants, owners of the Norwegian steamship Hero, and the National Surety Company, surety, for the sum of $2,000. Marie Etier filed a libel against Kjaer & Isdahl, owners of the Norwegian Steamship Hero, demanding $12,500, damages alleged to have been sustained as a result of the accidental death of her husband, Octave Etier, who was on board the Hero as keeper for the United States marshal; the vessel being then under seizure in a cause of salvage now pending in the United States District Court. It was alleged that the accident was due to the fault and negligence of the vessel, her officers, and owners. The following is a summary of facts not disputed:

Libelant, 69 years of age, is the widow of Octave Etier, who died on October 22, 1913. Octave Etier was a keeper on the Hero for the United States marshal, and as such had possession of the ship, which was a freighter. He fell through the opening in the floor or platform of the fidley or stokehold entrance of the vessel. Etier was 75 years old, and for 14 or 15 years had been a keeper for the marshal and had served on all sorts of ships. He was not always working, but when employed made $2.50 a day. He may have averaged from $300 to $400 a year, and he went on the Hero the afternoon of October 17th. He slept in the ship's cabin. At about 6:30 p. m. of October 18th he had eaten supper on the ship, and was on the starboard side of the bridge deck, when he walked into the fidley, fell through the opening in the platform, and was found lying in the stokehold, injured. When the accident happened, both doors leading from the bridge deck to the fidley were open, the opening in the floor or platform of the fidley was open, and the fidley and stokehold had no light inside. The fidley is the entrance to the stokehold; the latter being the room where the firemen fire the ship. A door leads from either side of the bridge deck into the fidley. To get into the fidley, it is necessary to step over a threshold or coaming. After entering one steps onto a platform or flooring made of round steel bars. In this flooring there is an opening about 6 feet from the starboard door and 3 feet 9 inches from the port door. The opening is about 2 feet square. From this opening a steel ladder goes down to the bottom of the stokehold.

Not a single witness testified that the fidley was a passageway. That it was not a passageway was testified to by the following: Ruiz; Ship's Carpenter John Olsen; Chief Engineer Anton Olsen; Captain Olaf Olsen; Captain J. E. Roop, a British shipmaster; Captain R. W. Lewis, port captain of the Porto Rico Line. All of the above witnesses likewise testified that the doors from the bridge deck to the fidley or stokehold entrance are usually left open, except in bad weather, and that nobody but firemen, mechanics, or engineers ever entered the fidley.

As to having a barrier around the opening in the platform, Captain Lewis testified that not all, but some, modern ships had a railing three-quarters of the way around the opening, but that the ships he had been master of had no railing around this opening. This was explained by the fact that nobody but firemen ever went into the fidley, and they knew perfectly well where the opening was. There is no proof whatever of anything requiring, or even suggesting, that Etier should go into the stokehold.

The opinion of the court below was as follows:

"This is a libel for damages for the death of Octave Etier, the husband of libelant, who fell through an opening on the steamship Hero and was killed. There is no dispute as to the facts. The hold through which Etier fell was in a compartment called the 'fidley.' It was not protected by any railing or other guard of any kind, and there was no light in the fidley. There was a ladder leading down through this hole into the engine room or stokehold, and it was habitually used by the members of the crew in going down into that part of the ship. The fidley is a compartment in the main house on the steamer with doors opposite each other, one on each side, and opening out on the deck.

At the time of the accident the vessel was under seizure by the marshal, and Etier was the keeper. Etier was standing on the starboard side of the ship, which was against the dock, and stepped into the fidley. It was after dark, and he had just finished his supper. The supposition of some of the witnesses is that he stepped inside in order to light his pipe or a cigarette. I do not know that he was warned to keep out of the fidley, and it is evident that he attempted to pass through it to the other side of the ship, and fell into the trap awaiting him.

"It seems to me that under the circumstances his widow should be allowed to recover. Conceding that the vessel was a freight carrier, and that the hole was intended for the use of the crew only, it was gross negligence to leave the doors in each side open, and not to have some light in the fidley, or some protection around the opening. Etier was lawfully on the ship. The passage offered an attractive means of getting from one side of the ship to the other, especially to a man such as Etier, who would naturally take the shortest way, and it should have been anticipated that any person on the ship would so make use of it. The deceased was 75 years old. His widow is 69. He had been employed more or less steadily by the marshal as a keeper, and earned on an average $300 to $400 a year. It is quite probable that he would have continued to be so employed as long as he was able to get about, as, for the purpose of maintaining the seizure of a ship, he would be just as well qualified as a younger and stronger man.

"Considering these facts, it seems to me that an award of $2,000 would do justice in the case. There will be a decree for that amount, with interest from the date of the decree."

George Terriberry, of New Orleans, La., for appellants.
Armand Romáin, of New Orleans, La., for appellee.

Before PARDEE and WALKER, Circuit Judges, and MAXEY, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). This is a libel in personam, which is prosecuted on the theory that, as Etier was lawfully on the ship, the owners were negligent in not providing for his safety, in that the trapdoor or coal chute was negligently left open by the officers in charge, that no light nor lights were placed at or near the opening, that no guard rail was placed around the said opening in said passageway or gangway, that no warning was given to Etier of the dangerous premises, and that no lights of any kind, with the exception of one dim lantern located a great distance away, were used or furnished on the ship, so that all the passageways or gangways were rendered dark or unsafe.

Considering the evidence in this aspect, we are not satisfied that liability was established. Etier was a man of experience, familiar with ships and their construction, and it is to be presumed knew that necessarily on all steamships there were many dangerous places and passageways, and that it was unsafe, without specific knowledge or light, to wander around the ship at night. He was not a passenger nor invited guest on the ship, nor an inexperienced employé; and having no contract relations with the owners, they owed him in the most favorable light only ordinary care, and that he received. The owners were not negligent in the ship's construction; the trapdoor of the coal chute and the doors to the fidley were left open to give air to the stokehold, and no light was required in the fidley, because it was not a passageway, and only people having duties therein, such

as firemen, engineers, and officers, could have any business or occasion to enter therein.

The authorities cited by the libelant all appear to be cases where the injured party was either on board as a passenger or on the invitation or business of the ship, and are not applicable to the instant case. Taking the case as a whole, the transcript shows that at the time of the injury to Etier the owners' possession had been for some time and was then divested. The ship was in custodia legis, and the marshal, representing the United States, was in possession and charge thereof, and was represented on board by Etier, libelant's intestate, to whom the owners owed no other duty than not to willfully injure him. If the doors of the fidley were left open, and the fidley was not lighted, and the place was dangerous and ought to have been lighted, it was the fault and negligence of the marshal, represented by Etier, and the owners were not responsible.

As to authority of owners when a ship is in custodia legis, see The Esteban De Antunano (C. C.) 31 Fed. 920.

The decree of the District Court is reversed, and the libel dismissed.