## THE POZNAN.

(District Court, S. D. New York. March 23, 1923.)

1. Maritime liens ⬤⟿4—Vessel not subject to lien while under arrest.

No maritime liens can arise against a vessel while under arrest, unless the arrest is colorable.

2. Wharves ⬤⟿18—Lien for wharfage ceases on arrest of vessel.

A lien for wharfage arises from day to day, and ceases on the arrest of the vessel.

3. Wharves ⬤⟿18—Lienors held chargeable with wharfage which inured to their benefit.

Where a vessel, while discharging at a pier, was arrested at suit of lienors, who were also owners of the cargo, the fund recovered by them is chargeable with reasonable wharfage for use of the pier during the time required to complete the discharge, so far as the service was for their benefit.

4. Wharves ⬤⟿18—Liability for wharfage after arrest of vessel.

Arrest of a vessel while using a pier does not terminate liability of the owner for wharfage under a contract with the owner of the pier, which continues as though the vessel was not under arrest, and the pier owner will be required to apply a sum paid under the contract to payment of wharfage as it accrues, at the contract rate, until exhausted, after which the liability is that of the lienors who caused the arrest.

In Admiralty. Suit by the New York Dock Company against the Steamship Poznan. Decree for libelant against fund in court.

Charles E. Hotchkiss, of New York City, and Alexander J. Feild, of New York City, for libelant.

George Whitefield Betts, Jr., and Arthur H. Haaren, both of New York City, for John B. Harris Co.

---

LEARNED HAND, District Judge. The Poznan, being owned by a Delaware corporation, was not in her home port while in New York, though there enrolled, The Plymouth Rock, 13 Blatchf. 505, Fed. Cas. No. 11,237; The Havana, 64 Fed. 496, 12 C. C. A. 361 (C. C. A. 2). A maritime lien for wharfage proper was therefore created, if the contract did not preclude it, Ex Parte Easton, 95 U. S. 68, 24 L. Ed. 373. No one disputes that in a "foreign" port such a lien arises. Indeed, at least in this circuit, such a lien arises in the "home" port. The Scow No. 15, 92 Fed. 1008, 35 C. C. A. 149 (C. C. A. 2); The Allianca (D. C.) 56 Fed. 609; The Advance (D. C.) 60 Fed. 766; The Kate Tremaine, 5 Ben. 60, Fed. Cas. No. 7622; The C. Vanderbilt (D. C.) 86 Fed. 785. In many of these cases the language was obiter, but such a concurrence of opinion leaves no doubt of the law, and unquestionably settles it. My own opinion in The Isonomia, January 4, 1922, was wrong; the point apparently not being argued, but stress being laid on the effect of the act of 1920.

[1, 2] Therefore this case depends upon whether the usual maritime lien for wharfage did not arise because of the especial circumstance that the Poznan was arrested by the marshal on the day of her docking, December 2, and remained under arrest during all the remainder of the time charged for. It is well settled that, after a vessel has been arrested, unless the arrest is colorable (The Young America [D. C.] 30 Fed. 789; The Nisseqogue [D. C.] 280 Fed. 174, 186), no maritime liens can arise against her (The Esteban de Antunano, 31 Fed. 920; The Mary K. Campbell [C. C.] 31 Fed. 840; The Geisha [D. C.] 200 Fed. 866; The Bethulia [D. C.] 200 Fed. 876; The Phillomona [D. C.] 200 Fed. 873; The Astoria, 281 Fed. 618 [C. C. A. 5]; Kjaer v. Etier, 222 Fed. 243, 137 C. C. A. 659 [C. C. A. 5]; The Irages [D. C.] 283 Fed. 445). This necessarily follows on principle. The ship is in the custody of the court, and the court alone can pledge her upon such a lien; there must be some one authorized to create consensual liens. The marshal cannot, and obviously the owner cannot. Hence the Polish-American Navigation Company by its contract could not create any lien after the marshal once took charge. The contract did not at once create a lien for the whole period; that arose de die in diem, and ceased on December 2, if it ever began at all. Hence, in so far as this bill depends upon a maritime lien, it must fail.

[3] However, it is not necessary to deny the libelant all relief under the libel, if it has any against the fund in court. If the lienors, who are entitled to the whole of that fund, have in fact enjoyed the benefit of the wharfage service, to the extent of that benefit they may be called on to respond, upon familiar principles. This was the course pursued in The St. Paul, 371 Fed. 265 (C. C. A. 2). The Poznan required wharfage while under arrest; she required the wharfage which she got, or at least the creditors' committee of lienors, or a majority of them, thought so. The cargo was half delivered, and as the lienors were cargo owners, as well as lienors, they had an interest in where she lay. They naturally did not want part of their consignments delivered in one place and part in another, and the court declined to move her. Thus the libelant, which furnished the wharf,

has an equitable claim on the fund, though not a maritime lien on the ship, and in priority to the lienors to protect whose liens the service was rendered.

It follows, however, that the contract between the Polish-American Navigation Company and the libelant is not the measure of that benefit, or of the libelant's claim. That contract ceased to control as soon as the marshal took possession. The measure of recovery will be the fair value of the wharf between December 2, 1920, and the time when the Poznan could first have been moved. This, under the stipulation, was on February 18, 1921, when the cargo was discharged. The stipulation gives no explanation why the ship lay there till March 11, 1921, and there is no reason to charge the lienors with the value of so expensive a wharf between those dates, unless there was no other available, or unless the lienors insisted that she should so lie.

There must be a reference to ascertain the reasonable value of the wharfage between December 2 and February 18 at Pier No. 6. In addition, the libelant will be credited until March 12, 1921, with wharfage at the rate at which the Poznan was berthed after March 12, 1921, unless it appear that the lienors insisted on her remaining at Pier No. 6, or that her later berth was not available on February 18, or unless for some other reason it appears that the lienors were benefited by the continued higher wharfage at Pier No. 6. The lights and other incidental services necessary to the discharge seem to me also properly included, assuming that they actually quickened the discharge, and set free the Poznan for a less expensive berth.

[4] A more difficult question arises over the application of the money, $9,500, paid by the Polish-American Navigation Company to the libelant. The arrest did not terminate the Polish-American Navigation Company's liability under the contract. On the contrary, wharfage continued to be due quite as though the vessel was not under arrest. This sum I think the libelant must apply upon the contract as the charges fell due; that is to say, it will cover so many days' wharfage at $250 and incidentals as uses it up. Thereafter the fund in court will be chargeable till February 18, and later as above set forth, with the reasonable value of the services rendered the lienors.

Unless the parties agree on the amount, this issue will be referred to William Parkin, Esq., as special commissioner.