PAUL M. GAY, Plaintiff, *v.* POPE & TALBOT, INC., Defendant.

Supreme Court, Special Term, New York County, March 6, 1944.

*James F. Hart* for defendant.

*Max Krupp* for plaintiff.

LEVY, J. Plaintiff sues this defendant under the Federal Merchant Marine Act, 1920 (also popularly known as the Jones Act; U. S. Code, tit. 46, § 688, entitled: Recovery for injury to or death of seaman) to recover damages for injuries sustained by reason of defendant's alleged negligence while in its employ upon a vessel claimed by plaintiff to be owned, operated and maintained by defendant. It moves to dismiss the complaint pursuant to subdivision 2 of rule 107 of the Rules of Civil Practice upon the ground that this court has not jurisdiction of the subject matter. This claim is based upon Public Law No. 17 of the Seventy-eighth Congress, First Session, which became law March 24, 1943 (U. S. Code, tit. 50, Appendix,

§ 1291), and reads, in part, as follows: " (a) Officers and members of crews (hereinafter referred to as ' seamen ') employed on United States or foreign flag vessels as employees of the United States through the War Shipping Administration shall, with respect to (1) laws administered by the Public Health Service and the Social Security Act, as amended by subsection (b) (2) and (3) of this section; (2) death, injuries, illness, maintenance and cure, loss of effects, detention, or repatriation, or claims arising therefrom not covered by the foregoing clause (1); and (3) collection of wages and bonuses and making of allotments, have all of the rights, benefits, exemptions, privileges, and liabilities, under law applicable to citizens of the United States employed as seamen on privately owned and operated American vessels. * * * Any claim referred to in clause (2) or (3) hereof shall, if administratively disallowed in whole or in part, be enforced pursuant to the provisions of the Suits in Admiralty Act, notwithstanding the vessel on which the seaman is employed is not a merchant vessel within the meaning of such Act." It is contended that by virtue of those provisions the plaintiff is relegated to exclusive remedy under the Suits in Admiralty Act (U. S. Code, tit. 46, § 741 *et seq.*) by suit against the United States in admiralty without benefit of trial by jury. The vessel was entrusted to this defendant under a general agency contract with the United States through the War Shipping Administration, which defendant asserts constituted the plaintiff an employee of the United States and rendered it nonsuable.

Plaintiff not only denies his employment by the United States but contends that Congress did not intend by the quoted statute to deprive seamen of existing remedies upon claims for injuries based upon the negligent operation of agents in the situation of this defendant. While the word " *shall* " when used in a statute is ordinarily the language of command, it is not the final and conclusive test. Thus in *Escoe* v. *Zerbst* (295 U. S. 490) Mr. Justice CARDOZO declared: " The defendant ' shall ' be dealt with in a stated way; it is the language of command, a test significant though not controlling. *Richbourg Motor Co.* v. *United States,* 281 U. S. 528, 534. Doubt, however, is dispelled when we pass from the words alone to a view of ends and aims."

Referring to House of Representatives Report No. 107, accompanying H. R. 133 of the First Session of the Seventy-eighth Congress, the purpose of the statute is expressed at page 2 as follows: " The effect of section 1 is to provide that officers and crew

members who are employed on behalf of the United States through the War Shipping Administration shall be ·put on the same basis as seamen in private employment with respect to rights, benefits, and privileges in connection with employment, particularly in case of death, injury, or other casualty. Under the bill, these employees of the War Shipping Administration will have the seaman's right to wages, maintenance, and cure, in case of illness or injury in the ship's service. They will have the benefits of the Public Health Service, including marine hospitals, like other seamen. They will have old-age and survivors' insurance under the Social Security Act. They will continue to have the right to indemnity through court action for injury resulting from unseaworthiness of the vessel or defects in vessel appliances, *and they (and their dependents) will have the right to action under the Jones Act (1920) for injury or death resulting from negligence of the employer.* Such seamen will have the right to enforce claims for these benefits according to the procedure of the Suits in Admiralty Act except that claims with respect to social-security benefits shall be prosecuted in accordance with the procedure provided in the social-security law. The seamen and their dependents or beneficiaries will have the protection of war-risk insurance at the employer's expense in accordance with the decisions of the Maritime War Emergency Board as required for all privately employed seamen.

" To avoid confusion and duplication of benefits, these seamen would be expressly excluded from coverage under certain statutes which otherwise would in some cases at least apply to them. These seamen employees would not be covered under the Civil Service Retirement Act because of the temporary character of their Government employment and because as private employees they have the old-age benefits of the Social Security Act. *They are not to be covered under the United States Employees' Compensation Act because they and their dependents have the right to sue for indemnity or damages under the Jones Act in case of death or injury and they and their beneficiaries have the protection of Government war-risk insurance.* They would be excluded from coverage under Public Law 490, Seventy-Seventh Congress, because the pay and allowances provided in that act for missing and interned employees of the United States are furnished for seamen and their dependents under the requirements of the Maritime War Emergency Board. They are not to be covered under Public 784, Seventy-seventh Congress, which provides war casualty compensation

and detention payments for contract employees of the United States serving outside the United States, because the seamen in question are protected under the right to sue for indemnity or damages and under the war-risk insurance coverage.

"The basic scope and philosophy of the measure is to preserve private rights of seamen while utilizing the merchant marine to the utmost for public wartime benefit. Except in rare cases the ships themselves are being operated as merchant vessels, and are therefore subject to the Suits in Admiralty Act. Granting seamen rights to sue under that act is therefore entirely consistent with the underlying pattern of the measure. This should follow even in the extraordinary case where vessels might otherwise technically be classed as public vessels.

" The provisions of section 1 are made applicable with respect to rights and claims which may have accrued prior to the enactment of the bill. Any claim or action of the seaman employee accruing on or after October 1, 1941, and prior to the enactment of the measure may be enforced, *upon election to do so,* in accordance with the provisions of section 1 as if it had been law when the claim or action accrued.

" The specific amendments to existing law necessary to implement the policy to continue or reinstate seamen employees of the War Shipping Administration under the old-age and survivors' insurance provisions of the Social Security Act are contained in subsection (b) (1), (2), (3), and (4) of section 1. These are amendments to section 1426 of the Internal Revenue Code and section 209 of the Social Security Act. Coverage under the old-age benefits would be retroactive to October 1, 1941, subject to adjustment where the employees' tax for the employment period had not been paid." (Italics supplied.)

Thus it is clear that the Congressional intent was to afford to seamen an election to enforce their claims for injuries under the Suits in Admiralty Act rather than an exclusive remedy thereunder.

Public Law 17 was first offered in the House of Representatives as H. R. 7424 in 1942 and its purpose was declared in Senate Report No. 1813, Seventy-seventh Congress, Second Session, to be: " Inasmuch as seamen covered by section 1 will be entitled to the *rights provided under the Jones Act and general maritime law and to the remedies under the Suits in Admiralty Act,* they are expressly excluded from any benefits which would otherwise accrue as employees of the United States under the United States Employees' Compensation Act. *This eliminates the danger that seamen might recover both against the Federal*

*employees' compensation fund and under statutory or common-law remedies for the same injury.''* The aim of the statute was also to provide insurance coverage of seamen thus employed against war risks and enabled the agents to carry and to pay premiums upon such insurances for their own protection.

Defendant urges the statute was enacted to correct any misconceptions which may have arisen in the wake of the doctrine enunciated by Mr. Justice Douglas in *Brady* v. *Roosevelt S. S. Co.* (317 U. S. 575, rehearing denied 318 U. S. 799), where he wrote: '' For when it comes to the utilization of corporate facilities in the broadening phases of federal activities in the commercial or business field, immunity from suit is not favored. *Keifer & Keifer* v. *Reconstruction Finance Corp.,* 306 U. S. 381; *Federal Housing Administration* v. *Burr,* 309 U. S. 242. Congress adopted that policy when it made corporations wholly owned by the United States suable on maritime causes of action under § 2 of the Suits in Admiralty Act. That it had the power to grant or withhold immunity from suit on behalf of governmental corporations is plain. *Federal Land Bank* v. *Priddy,* 295 U. S. 229; *Reconstruction Finance Corporation* v. *Menihan Corp.,* 312 U. S. 81. We may also assume that it would have the power to grant immunity to private operators of government vessels for their torts. *But such a basic change in one of the fundamentals of the law of agency should hardly be left to conjecture.* The withdrawal of the right to sue the agent for his torts would result at times in a substantial dilution of the rights of claimants. *Assuming that the ordinary rules of agency apply in determining whether the United States or the Maritime Commission is responsible under § 2 of the Act for torts of private operators such as respondent, there would be instances where unless the private operator was liable no one would be. The principal is not liable for every negligent act of his agent.* Furthermore, if all suits to enforce maritime causes of action must be brought in such cases under § 2 of the Act the short statute of limitations of two years contained in § 5 is applicable. *Emergency Fleet Corp.* v. *Rosenberg Bros. & Co., supra.* * * * *We can only conclude that if Congress had intended to make such an inroad on the rights of claimants it would have said so in unambiguous terms.* * * * Such a change would be detrimental to the interests of private claimants, as we have said, since it would subtract from the legal remedies which the law has afforded them. Beyond that it would make the existence of a right to exoneration or indemnity a jurisdictional fact. That could hardly help but complicate and delay the enforcement of rights

based on these maritime torts. *At least in the absence of a clear Congressional policy to that end, we cannot go so far.* * * * *We hold that the Suits in Admiralty Act did not deprive petitioner of the right to sue respondent for damages for his maritime tort."* (Italics supplied.)

Not only does the statute fail to demonstrate any clear purpose or policy to effect such a basic change in substantial rights for which defendant contends, but it was offered in 1942, long before the *Brady* case (*supra*) was decided in the United States Supreme Court, on January 18, 1943. The only reference to the *Brady* case and its influence upon the legislation may be found in Senate Report No. 1655, Seventy-seventh Congress, Second Session, at page 33, but that followed the determination in the *Brady* case in the Court of Appeals for the Second Circuit, in 1942 (128 F. 2d 169). In that connection the report says: " Section 3 (i) of the committee substitute is intended to avoid potential difficulty by specifically providing that the insurance powers of the War Shipping Administration include the power to cover the agents as well as the owners or charterers of the vessels. It has always been assumed that the agents do not have a liability which is separate or independent of that of the vessel owner or charterer. However, some recent decisions have given rise to the possibility that some agents may have an independent liability. (*Quinn* v. *Southgate Nelson Corporation,* 121 F. [2d] 190 [C. C. A. 2d, 1941], certiorari denied, 314 U. S. 682). *Margaret M. Brady* v. *Roosevelt Steamship Company, Inc.* [128 F. (2d) 169; C. C. A. 2d, 1942].) At the present time the War Shipping Administration may provide insurance for the interests of the owners or charterers of the vessels. The right to include the interests of agents is not specifically mentioned in the law but is believed to be implied therein. In view of the possibility that agents may have an independent liability it is desirable to amend section 3b of Public, 101, Seventy-seventh Congress, to specifically include agents among those entitled to coverage under the Administration's insurance powers."

It would seem to follow that if an agent may be independently liable in that regard he would also be independently liable under the Jones Act (U. S. Code, tit. 46, § 688).

Defendant places reliance upon *Murray* v. *American Export Lines* (53 F. Supp. 861). But there the plaintiff conceded the only negligence relied on was that of a fellow servant over whom defendant exercised no control and that both he and the plaintiff were employed by the United States. No other negli-

gence was specified or claimed, nor was there any claim by the defendant that it was generally nonsuable, and the court, in its opinion, did not determine that Public Law 17 created an exclusive remedy.

For the reasons indicated, I hold that for the purpose of this suit, at least, the *Brady* case (*supra*) was not superseded and that the statute does not create an exclusive remedy. The motion is denied.