ISADORE COHEN, Plaintiff, *v.* AMERICAN PETROLEUM TRANSPORT CORP., Defendant.

City Court of the City of New York, Trial Term, New York County, January 29, 1947.

*Louis L. Harolds* and *William L. Standard* for plaintiff.

*John L. Quinlan* for defendant.

COLEMAN, J. This is an action under the Jones Act (Merchant Marine Act of 1920, § 33; U. S. Code, tit. 46, § 688) by a former member of the crew of S. S. *Fort Laramie* to recover damages for injuries he sustained on that vessel on February 21, 1946. The case was tried without a jury.

The *Fort Laramie* was being operated by the defendant for the War Shipping Administration under an agreement similar to that involved in *Hust* v. *Moore-McCormack Lines* (328 U. S. 707). And the question to be decided, before going into the merits of the action, is whether the plaintiff may sue the operating company at law under the Jones Act or whether, as the defendant contends, plaintiff is limited to a suit against the United States under the Suits in Admiralty Act (U. S. Code, tit. 46, § 741 *et seq.*) On the basis of the *Hust* decision (*supra*) this question would of course be decided in favor of the plaintiff were it not for the defendant's contention that the act of March 24, 1943, defining the rights of seamen employed through the War Shipping Administration (Clarification Act; U. S. Code, tit. 50, Appendix, § 1291) compels seamen to sue under the Suits in Admiralty Act. The *Hust* case held that a seaman on a merchant vessel operated by a private shipping company under arrangement with the War Shipping Administration could sue the operator at law under the Jones Act. The court thought that whether seamen on such vessels are " technically " employees of the United States or of the shipping company, it would require more than logical deduction from the premises that the United States is the owner of the vessel and the operator only the agent to conclude that the Jones Act denies seamen a recovery at law against the operator and limits them to a recovery under the Suits in Admiralty Act, but with the substantive benefits of the Jones Act. To repeat another court's paraphrase of the Supreme Court's language, " the agent remains the employer sufficiently to be liable to members of the crew under the Jones Act " (*Militano* v. *United States*, 156 F. 2d 599, 602).

Hust had been injured on March 17, 1943; the statute now in question was passed a week later. Does the act of March 24, 1943, change the situation? The question was deliberately and necessarily left open in the *Hust* decision (*supra,* p. 727). As the legislative history of the Clarification Act shows, there had been considerable doubt in the early part of the war period as to the rights and remedies of seamen on vessels operated by private steamship companies for the War Shipping Administration; there had been " confusion and duplication of benefits ". Were these seamen employees of the Government; did they have the rights of Government employees as to compensation benefits for injuries, as to retirement provisions? Could they in addition recover under the Jones Act; and in what tribunal was an action to be brought? Were the private operators liable? (Sen. Report No. 62, 78th Congress, 1st Sess.; House Report No. 2572, 77th Congress, 2d Sess.; House Report No. 107, 78th Congress, 1st Sess.)

The act was passed so as to define the rights of such seamen once and for all, but it is plain from a reading of the statute itself and without the aid of the committee reports that what was intended to be fixed was the liability of the Government toward the seamen; the rights and obligations of seamen vis-à-vis the Government were alone in question. The statute provided that because of the temporary wartime character of their employment by the War Shipping Administration, seamen " employed * * * as employees of the United States through the War Shipping Administration " were " not to be considered as officers or employees of the United States for the purpose of the United States Employees Compensation Act, * * * the Civil Service Retirement Act," etc. They were, however, to " have all of the rights * * * under law applicable to citizens of the United States employed as seamen on privately owned and operated American vessels ", that is to say, among other rights, those under the Jones Act. And those rights could only be enforced in admiralty under the Suits in Admiralty Act. Is it not clear that Congress was speaking only of seamen who, it thought, were employees of the United States and only of the obligations which the United States as employer owed them? It may be that Congress taking a narrow view of the decision in *Brady* v. *Roosevelt S. S. Co.* (317 U. S. 575) believed that there was no liability upon the part of the operating companies and that only the Government was liable; and it was providing the basis of Government liability and the court which would

enforce it. It may be that Congress did not foresee that the Supreme Court in the *Hust* case (*supra*) would permit a recovery against the operating companies without reference to the question whether seamen could also sue the Government. These doubts of Congress and its uncertainty as to the posture of affairs were reflected in Mr. Justice RUTLEDGE's references to the act in the *Hust* case (328 U. S. 707, 727, *supra*). "We need not determine in this case whether prospectively the Clarification Act affected rights of the seaman against the operating agent and others, or simply made sure that his rights were enforceable against the Government." Yet the fact is that the liability of the operators is in no way touched in the statute. Their obligations to the members of the crew therefore remain as they were without reference to it; and by virtue of the *Hust* case they are liable under the Jones Act.

I turn to the merits of the case. The plaintiff, who was an oiler, and a pumper, his superior, were cleaning strainer covers in the engine room. A cover, weighing about 150 pounds, would be lifted up by a chain tackle, the strainer cleaned and the cover then lowered into place. While the two men were putting a strainer in place, with the pumper operating the chain tackle, the cover came to rest, fouling some of the studs that projected from the strainer over which the cover fitted. The plaintiff, without giving any warning to the pumper of what he was about to do, then inserted his finger under the cover to adjust it to the studs. The pumper allowed the cover to descend a few inches without his giving any signal although it must have been apparent to him that the cover had already come to rest against some object and that it should not be moved without warning. The plaintiff's finger was caught between the cover and the strainer and was badly damaged. It seems to me that both plaintiff and the pumper were equally at fault and that the plaintiff, because of the extent of his contributory negligence should have only one half of what he otherwise would have received (Jones Act; U. S. Code, tit. 46, § 688; Employers' Liability Act; U. S. Code, tit. 45, § 53). There is a permanent injury to the finger for which the plaintiff should be compensated but in view of his contributory negligence I am limiting his recovery to $1,500. There has been no claim for maintenance and cure and I have not taken that element of recovery into consideration. (Cf. *Pacific S. S. Co.* v. *Peterson,* 278 U. S. 130.)

Judgment for the plaintiff for $1,500.