## GAYNOR v. AGWILINES, Inc.

Civ. A. No. 6321.

District Court, E. D. Pennsylvania.
Nov. 26, 1947.

Supplemental Opinion Jan. 21, 1948.

Abraham E. Freedman and Freedman, Landy & Lorry, all of Philadelphia, Pa., for plaintiff.

Thomas E. Byrne and Krusen, Evans & Shaw, all of Philadelphia, Pa., for defendant.

GANEY, District Judge.

This is a civil action for wages, maintenance and cure, and for the value of personal effects by a seaman against the defendant which operated a merchant vessel under a general agency agreement entered into between it and the United States through the War Shipping Administration.

The facts are not in dispute and they may be set forth briefly as follows: On September 10, 1945, the plaintiff signed shipping articles to become a member of the crew of the Steamship Christopher Gadsden in the capacity of a utility man at the rate of $87.50 plus bonus, overtime and found for a voyage from Philadelphia, Pennsylvania, to any port in the world for a period not to exceed twelve months. The defendant operated the vessel under a general agency agreement with the United States through the War Shipping Administration. On October 1, 1945, the plaintiff's rate of pay was increased to $132.50 per month. On December 24, 1945, while the vessel was in the port of Charleston, South Carolina, the plaintiff obtained shore leave. On Christmas Day, the plaintiff, with the intention of visiting his relatives in Rand, South Carolina, boarded a bus for Walterboro, which was the nearest stop to Rand. While it was on the highway, thirty miles from Charleston, the bus was involved in an accident in which the plaintiff was injured. As a result of the injuries sustained by him, he was unable to resume his usual occupation and duties, and, at least up to the time this action was brought, he has been under medical care. The plaintiff has received wages earned by him covering the period from September 10, 1945, to December 28, 1945. However, the defendant has refused the plaintiff's demand and claim for wages for the period from December 28, 1945 to the date of the unexpired portion of the voyage, for maintenance and cure for the period of his disability, and for the value of his personal effects which he alleged were left aboard the vessel.

Before we may pass to the question of the liability of the defendant, we must first determine whether the plaintiff can maintain this action. In its answer to the complaint, the defendant alleged that the plaintiff has failed to comply with the provisions of the Clarification Act of 1943[1]. Section 1(a) of the Act, 50 U.S.

---

[1] Act of March 24, 1943, c. 26, 57 Stat. 45–51, as amended, 50 U.S.C.A.Appendix, §§ 1291– 1295.

C.A.Appendix Sec. 1291(a), as is pertinent here, provides: "Officers and members of crews (hereinafter referred to as 'seamen') employed on United States or foreign flag vessels as employees of the United States through the War Shipping Administration shall, with respect to * * * (2) * * * maintenance and care, loss of effects * * * and (3) collection of wages and bonuses * * * have all the rights, benefits, exemptions, privileges, and liabilities, under the law applicable to citizens of the United States employed as seamen on privately owned and operated American vessels * * *". The Act further provides: "Any claim referred to in clause (2) or (3) hereof shall, if administratively disallowed in whole or in part, be enforced pursuant to the provisions of the Suits in Admiralty Act (Title 46, Sec. 741–752), notwithstanding the vessel on which the seaman is employed is not a merchant vessel within the meaning of such Act. * * * When used in this subsection the term 'administratively disallowed' means a denial of a written claim in accordance with the rules or regulations prescribed by the Administrator, War Shipping Administration, * * *". (As of September 1, 1946, all functions, powers and duties of the War Shipping Administration have been transferred to the United States Maritime Commission.[2]) On April 22, 1943, the War Shipping Administration issued General Order 32[3] wherein were contained certain provisions requisite to the filing of claims with the Administration or its General Agents. The pertinent sections of the Order appear in Rodinciuc v. United States, D.C.E.D.Pa., 74 F.Supp. 284 and therefore they need not be set forth here. The plaintiff has complied with Section 304.25 of the order by filing a claim with the General Agent of the vessel, which has disallowed the claim. Therefore, the plaintiff is entitled to enforce his claim by court action. However, such action must be brought, since the plaintiff was an employee of the United States through the War Shipping Administration at the time the cause of action arose, in accordance with the terms of the Clarification Act, which provides that the action must be brought pursuant to the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. Therefore, if he is to recover at all, the plaintiff must bring his action against the United States pursuant to the provisions of the Suits in Admiralty Act, and not against the defendant herein. See United States v. Lubinski, 9 Cir., 153 F.2d 1013.

In the cases of Hust v. Moore-McCormack Lines, 328 U.S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534 and Aird v. Weyerhauser Steamship Company, 3 Cir., — F.2d —,* the cause of action arose prior to the enactment of the Clarification Act, and since the plaintiffs in each case did not elect to sue under it, the Act was inapplicable. In Caldarola v. Eckert, 332 U.S. 155, 67 S.Ct. 1569, the plaintiff was a longshoreman, and since the Clarification Act concerns "seamen", the Act was of no consequence.

Accordingly, the action is dismissed without prejudice to the plaintiff.

## Supplemental Opinion

This is a request for a rehearing of the determination that no civil action for wages, maintenance and cure, and for loss of personal effects can be maintained against the defendant under the facts as set forth in this Court's opinion of November 26, 1947. The request was granted at the insistence of counsel for the plaintiff who asked that the Clarification Act and certain alleged pertinent authorities be reviewed in the light of the fact that by reason of this Court's holding the rights of seamen employed through the War Shipping Administration would be curtailed.

During the acquisition of substantially our entire Merchant Marine by the United States through the War Shipping Administration and its predecessors, a number of legal problems with respect to the rights of the seamen, employed to man the vessels were created. These seamen, as expressed

---

2 Section 202 of the Act of July 8, 1946, c. 543, Title II, 60 Stat. 501, 50 U.S.C.A. Appendix, § 1291 note.

3 8 F.R. 5414, 46 CFR, Cum.Supp. 304.-20–304.29.

* Not released by court at date of publication.

by their representatives, desired rights enjoyed by seamen employed on privately owned vessels such as those under the Jones Act, 46 U.S.C.A. § 688, as well as the existing bargaining agreements entered into between the private vessel owners and the labor unions in preference to those afforded by Federal statutes enacted for the benefit of government employees. The policy of the War Shipping Administration of attempting to give the seamen employed by it the preferred rights was hindered by the fact that they were technically government employees. In this status they could not earn credits toward benefits provided by the Social Security Act, 42 U.S.C.A. § 301 et seq., while at the same time they were excluded from the benefits of the Civil Service Retirement Act, 5 U.S.C.A. § 691 et seq., by Executive order. Doubt prevailed since it was thought their rights varied because they were made to depend on the fortuitous relationship[1] of the War Shipping Administration to, or the nature[2] of, the vessels on which they were employed. Thus if the vessel was owned by, or bareboat-chartered to, the War Shipping Administration, the crew became technically employees of the government; on the other hand, if the vessel was time-chartered to the Administration, the crew remained the private employees of the vessel's owner. In addition the exact status of these seamen was further confused when vessels of the Administration were chartered or made available to another department or agency of the United States. Because the provisions of the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., provided that suits thereunder may be brought only if the ship involved is a merchant vessel or a tugboat, a seaman employed on a public vessel could not sue the United States for damages. As a result of the conditions hereinabove adverted to, it could not always be determined with any amount of certainty whether a vessel in question was technically a public or a merchant vessel, and as a consequence these seamen were made to rely upon the policy of the Administration for an adjustment of their claims for such injuries.

In 1930 the Supreme Court in United States Shipping Board Emergency Fleet Corporation v. Lustgarten (No. 32), 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451, held that a seaman could not recover from the private operator for injuries sustained by him while he was employed on a merchant vessel owned by the United States. The Court based its decision on the rule that the remedies given by the Suits in Admiralty Act were exclusive in all cases where a libel might be filed under it. However on January 18, 1943, in Brady v. Roosevelt S. S. Co., 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471, the Supreme Court, in modifying the broad rule laid down in the Lustgarten case, held that the Suits in Admiralty Act did not save the private operator working under a general agency agreement from suit to recover damages for injuries sustained by a third person as a result of its negligent operation of a merchant vessel owned by the United States.

On June 8, 1942, Admiralty Rule 46, 28 U.S.C.A. following section 723, was amended to prevent the possibility of a case being heard which might reveal information of value to the enemy. No concurable rule or amendment existed on the civil side of the Federal Court.

It was against this background, briefly as we have stated it, that Congress passed the so-called Clarification Act of March 24, 1943, 50 U.S.C.A.Appendix, § 1291 et seq., in order to restate, clarify and extend the rights of seamen employed through the War Shipping Administration.

The contention of the plaintiff is that the Act did not change in any way the rights and remedies which these seamen might assert or have against the general agents of the vessels. As a basis for his contention, he relies upon the wording of the Act, Hust v. Moore-McCormack Lines, 328 U.S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534, and Aird v. Weyerhauser Steamship Com-

---

[1] Prior to Hust v. Moore-McCormack Lines, Inc., 328 U.S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534, June 10, 1946.

[2] Prior to American Stevedores, Inc., v. Porello, 330 U.S. 446, 458, 460, 67 S. Ct. 847, 91 L.Ed. 1011, sub nom. United States v. Lauro, March 10, 1947.

pany, 3 Cir., —— F.2d ——.* It is true that the Act does not expressly say that the seamen in question can not bring their actions against the general agents upon the existence or occurrence of the circumstances listed under clauses (2) and (3) of section 1(a). However, it seems that the Act, taken as a whole, in connection with its background and the reports of the Senate and House, expresses a clear command by Congress that the enforcement of the various substantive rights of the seamen in question is to be remitted to the new remedy[3], set forth therein, namely, by first presenting the claim to the War Shipping Administration in accordance with the rules and regulations prescribed by it, and then after the claim has been administratively disallowed, by bringing suit on the claim pursuant to the provisions of the Suits in Admiralty Act. Merely because Congress stated that with respect to those circumstances listed in clauses (2) and (3) of section 1(a) the seamen employed by the War Shipping Administration shall "have all of the rights, benefits, exemptions, privileges, and liabilities, under law applicable to citizens of the United States employed as seamen on privately owned and operated American vessels," it does not follow that Congress meant that they shall have the same remedies Congress was not haphazard, but careful in the use of terms. The omission of the word "remedies" was not accidental but intentional. Section 4 of the Act is not an indication that Congress intended that these rights could be enforced against the general agent as heretofore side by side with the new remedy. That section, in part, was intended only to afford the general agent limited protection in the event of the arising of a situation similar to that which arose in Brady v. Roosevelt S. S. Co., supra. If the interpretation placed upon the Clarification Act by the plaintiff was in fact the intention of Congress, passage of the Act, it seems would have been a vain gesture and completely unnecessary. A cause of action which arose prior to the passage of the Act is not before us. Clearly the retroactive provision of the Act gives the seamen in question an election to sue under its provisions or to pursue his former remedies. There is no elective provision for the prospective operation of the Act and we are not permitted to read such a provision into it in view of the Act's mandatory language.

The Hust case held that while the government may be technically the employer of a seaman, under the temporary condi-

---

* Not released by court at date of publication.

[3] H.Rep.No.2572, 77th Cong., 2nd Sess., states: "Under clause 2 of section 1(a) these substantive rights would be governed by existing law relating to privately employed seamen. The only modification thereof arises from the remedial provision that they shall be enforced in accordance with the provisions of the Suits in Admiralty Act. This procedure is appropriate in view of the fact that suits will be against the Government of the United States. In such a suit no provision is made for a jury trial as may otherwise be had in a proceeding such as one under the Jones Act for reasons set forth in the letter of the Attorney General (September 14, 1942). * * * To prevent unnecessary or premature litigation against the United States. it is required that before suit there shall be an administrative disallowance of the same in accord with rules or regulations to be prescribed by the Administrator, War Shipping Administration".

S.Rep.No. 62, 78th Cong., states: "Section 1 would provide that officers and crew members who are employed on behalf of the United States through the War Shipping Administration on the same basis as seamen in private employment with respect to rights, benefits, and privileges in connection with employment, particularly in case of death, injury or other casualty. Under the bill, these employees of the War Shipping Administration will have the seamen's right to wages, maintenance, and cure, in case of illness or injury in the ships service. They will have the benefits of the Public Health Service, including marine hospitals, like other seamen. They will have old-age and survivors insurance under the Social Security Act. They will continue to have the right to indemnity through court action for injury resulting from unseaworthiness of the vessel or defects in vessel appliances, and they (and their dependents) will have the right to action under the Jones Act (1920) for injury or death resulting from negligence of the employer. Such seamen will have the right to enforce claims for these benefits according to the procedure of Suits in Admiralty Act. * * * "

tions then existing the common-law principle of employer-employee relationship need not obtain in order for the seaman to recover against the private operator "agent" under the Jones Act, and that the mere transfer of vessels from private ownership to government control did not deprive the seaman of any of the settled rights which he had prior thereto. Although there are some statements made in that case which might be relied on as supporting the plaintiff's contention in this case, inasmuch as the Supreme Court has expressly stated that it was limiting its discussion to the Act's retroactive provision and was refraining from making any determination as to the Act's prospective operation, we do not feel free to rely on those statements as governing in any wise the issues in this case.

It has been brought to our attention that a petition for rehearing has been filed with the Circuit Court of Appeals for the Third Circuit in the Aird Case. Until the Circuit Court makes a final disposition of that petition, we shall make no further comment on that case.

Accordingly, this Court's opinion filed November 26, 1947 is affirmed in accordance with the order of December 29, 1947.