Bernard ROTHMAN et al., Appellants,

v.

U–STEER–IT, Inc., Appellee.

No. 16473.

United States Court of Appeals
Fifth Circuit.

Sept. 17, 1957.

# 804

Arthur Roth, Miami, Fla., Rassner, Miller & Roth, Miami, Fla., for appellants.

Goble D. Dean, and Richard B. Adams, Miami, Fla., Brown, Dean, Adams & Fischer, Miami, Fla., for appellee.

Before RIVES and CAMERON, Circuit Judges, and BEN C. DAWKINS, Sr., District Judge.

BEN C. DAWKINS, Sr., District Judge.

Appellee is in the business of leasing motorboats to be driven or steered, as its name implies (U-Steer-It) by the lessees. In this case, the lease was signed by one of a party of two honeymooning couples from New York, Mr. and Mrs. Bernard Rothman and Mr. and Mrs. Clark Greenberg, who had met for the first time at a hotel in Miami, Florida. Their honeymoon trips were drawing to an end when they decided to go sight-seeing and take pictures from the water-front, Biscayne Bay. This was inspired, apparently, by circulars or advertising matter of Appellee found in the hotel. Hence they repaired to the latter's place of business where a boat was selected and Rothman signed the contract, but the names of the other three, Mrs. Rothman, and Mr. and Mrs. Greenberg, were noted on the margin as members of the party. Some hours later the boat exploded, all went overboard and the boat burned to the waters' edge.

All filed this single action in damages in separate parts, for personal injuries and the loss of personal property, alleging unseaworthiness of the boat and other types of negligence on the part of the Appellee. In its answer, the latter pleaded release by Rothman, under the terms of the contract, no cause of action as to the others, and, in the alternative, made a cross-claim for indemnity against Rothman, "* * * in the event any of the other plaintiffs are held entitled to recover."

The case was tried without a jury, and the Court, after quoting from the lease,[1] made specific findings of fact, and, since

---

1. " 'The Renter and his boating party are independent contractors and are considered so herein.

" 'The Renter certifies that he is at least 21 years old and agrees that he will not operate the rented boat while under the influence of alcoholics or narcotics, nor use it for any illegal purpose. The Renter agrees to return the rented boat in as good condition as when received.

" 'The Renter agrees to assume responsibility for all loss of equipment or damage up to the sum of fifty dollars occasioned to the rented boat while in his care. The Renter agrees not to surrender use of it to any individual without first obtaining written permission from U-Steer-It Inc.

" '*The Renter certifies that he has examined the boat and found it in excellent condition with complete Coast Guard approved and required equipment and agrees to return it in the same manner.*

" '*The Renter and all or any of his boating party, agree to protect the Owner, U-Steer-It, Inc., their successors and assigns, from any and all liability and from any damage or injury to any person or property suffered on, in, or about the boat, by reason of any present, future, latent or other defects in any form, character or condition of the said boat or any part or portion thereof.*

" 'The undersigned *Renter hereby covenants that he,* the undersigned, *or any individual in his boating party,* his or their heirs, distributees, guardians, legal representatives and assigns, *shall not sue,* arrest, attach or prosecute said U-Steer-It, Inc., *for injury or damage* resulting as aforesaid *and releases and discharges U-Steer-It, Inc.,* its successors and assigns, *from any or all actions, claims and demands,* which the renter, or his party, their heirs, distributees, guardians, legal representatives and assigns, *now and hereafter have for damages or injury* resulting as aforesaid.' " (Emphasis added.)

there is no substantial dispute, those facts so found are adopted as follows:

"The charterer's wife, Bernice Rothman, and the other plaintiffs, Clark Greenberg and Elayne Greenberg, were guests of the charterer and aboard the boat in question at all times material to this cause. These individuals *were not* however, *party to the* contract of charter.

"The charterer and other plaintiffs boarded the charter boat near downtown Miami and cruised the waters of Biscayne Bay until, after a few hours of sightseeing and picture-taking, the engine unexplainedly failed and they were forced to put ashore. *Plaintiffs* contacted the owner, requesting and receiving instructions on how to restart the boat's engine. Pursuant thereto, plaintiffs restarted the engine but had traveled only a short distance when a slight explosion took place in the bilge, starting a fire aboard the boat. All plaintiffs immediately jumped overboard, the abandoned boat proceeding alone until stopped by a second and larger explosion.

"*The first explosion and fire were caused by the accumulation of gasoline fumes in the bilge,* which fumes were apparently ignited by a spark produced by the boat engine or its accessories. *The cause of the accumulation of gasoline fumes in the bilge was gasoline leakage through small pin holes rusted or corroded in the gasoline tank.*

"Substantial injuries of varying degrees and loss and destruction of personal property *were caused to the charterer and plaintiffs as the direct and proximate result of the first explosion, the fire, and subsequent immersion.*

"*The defective condition of the gasoline tank existed at the commencement of the charter and rendered the boat unseaworthy at that time.*

"*A reasonably careful owner would have discovered the condition of the gasoline tank prior to the subject charter party. The Defendant, through its responsible agent, did not use ordinary care to discover and eliminate the defective and dangerous condition of the boat's gasoline tank. Such failure was the proximate cause of plaintiffs' injuries.*" (Emphasis added.)

The Court below held that Appellant Rothman had released Respondent from liability by the terms of the lease contract quoted in footnote No. 1 *supra,* and that the others had no right of action.[2]

2. "Since the oral contract encompassing the 'Boat Rental Agreement' is a maritime contract and since the injury complained of occurred on navigable waters, the rights and liabilities of the parties are determined by maritime law. American Hawaiian S.S. Co. v. Willfuehr, D.C. Md.1921, 274 F. 214, affirmed United States Fidelity & Guaranty Co. v. American Hawaiian S.S. Co., 4 Cir., 1922, 280 F. 1023; The Friendship II (Chambers v. Just), 5 Cir., 1940, 113 F.2d 105, reversed on other grounds, 1941, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903.

"The 'Boat Rental Agreement' is a demise charter, the charterer, Rothman thus becoming owner pro hac vice for the period of the lease.

"As to the plaintiff charterer, the defendant owner's implied warranty of seaworthiness was expressly and unequivocally negatived by the terms of the 'Boat Rental Agreement.'" See Cullen Fuel Co. v. W. E. Hedger, Inc., 1933, 290 U. S. 82, 54 S.Ct. 10, 78 L.Ed. 189. Moreover, the language of the "Boat Rental Agreement" is clearly broad enough to exonerate the owner from liability to the charterer for injury resulting from defects permitted to exist through the owner's own negligence, and the Court may not distort the plain meaning of the agreement to avoid this construction. Kokusai Kisen Kabushiki Kaisha v. Columbia Stevedoring Co., Inc., D.C.S.D.N.Y., 23 F.Supp. 403, affirmed 2 Cir., 1938, 100 F. 2d 1016.

"There is no implied warranty of seaworthiness running from the owner to the boating party because such a warranty does not extend to third persons not privy to the charter party. The Cullen No. 32, 2 Cir., 1932, 62 F.2d 68, affirmed 1933, 290 U.S. 82, 54 S.Ct. 10, 78 L.Ed. 189.

In doing so it said that " * * * since the oral (it was in writing) contract" was "a marine contract * * * " and the damages "occurred on navigable waters" the rights of the parties should be "determined by maritime law", and further that the rental agreement was "a demise charter" which made Rothman the "owner *pro hac vice* for the period of the lease." Further, as to Rothman, defendant's "implied warranty of seaworthiness was expressly and unequivocally negatived by the rental contract", and that its language "was broad enough to exonerate" Respondent from liability for its "own negligence."

As to the other plaintiffs, Mrs. Rothman and the Greenbergs, it was held there was "no implied warranty of seaworthiness running from the owner to the boating party" for the reason "such warranty does not extend to * * * persons not privy to the charter party; * * * they were gratuitous licensees of the charterer", as to whom the owner was under no "affirmative duty * * * to guard against injuries * * * even if caused by defects existing at the commencement of the charter", but that the "owner's liability is limited to cases where he knows of and conceals hidden dangers existing aboard the vessel at the time of the transfer to the charterer."

There was judgment for Respondent rejecting the demands of all plaintiffs, and they have appealed.

Although Appellants make nine assignments of error, we conclude there are only two real questions, either of which, answered in the negative, will require reversal and remanding of the case.

(1) Do the terms of the rental contract, in clear and unequivocal language release Appellee from the consequences of the negligence which caused the damage?

(2) Does the very nature of Respondent's business, even though its boats are leased for use in navigable waters, bring that business and those leases within the category contended for by Appellee, in view of the ever tightening standards of the statutes (See Act June 5, 1936, 49 Stat. p. 1479, 46 U.S.C.A. § 183) and jurisprudence dealing with the release of the owner of a vessel from the consequences of his own negligence?

The underlying reasons for limitation of liability on the part of owners of commercial carriers by water are well known, but in those instances seaworthiness is a sine qua non. Harter Act, Feb. 13, 1893, c. 105, Sec. 3, 27 Stat. 445, 46 U.S.C.A. § 192, The H. A. Scandrett (Sellon v. Great Lakes Transit Corporation) 2 Cir., 87 F.2d 708. However, it is not contended that this statute applied, but Appellants do insist that the motorboat was unseaworthy, due to Appellee's gross negligence. The Harter Act serves to illustrate the importance lawmakers attached to the primary safety of persons and property which the owners of common carriers by sea can initially insure.

Because of less ability to cope with perils of the sea in earlier times, and the necessity of depending on crews who were not always experienced or reliable, the limiting of liability of the owners to the vessel and its cargo, where the inexorable law of seaworthiness had been met, was intended, presumably, to encourage investment in the shipping industry. It was some time after passage of the Harter Act (Feb. 13, 1893), which, with earlier Acts, had crystallized provi-

"The members of the boating party were gratuitous licensees of the charter. The owner of a vessel under a demise charter is not under an affirmative duty of care to guard against injuries to licensees of the charterer even if caused by defects existing at the commencement of the charter. The rule is rather that the owner's liability is limited to cases where he knows of and conceals hidden dangers existing aboard his vessel at the time of its transfer to the charterer. In re New York Dock Co. (In re Converse), 2 Cir., 1932, 61 F.2d 777; Kjaer & Isdahl v. Etier, 5 Cir., 1915, 222 F. 243; and see Restatement, Torts, Sec. 358, Comment c (1934), imposing a similar duty upon landlords with respect to their liability to licensees of the lessee for injury caused by pre-existing defects in the premises."

sions of maritime law into express terms, the internal combustion engine came into general use in smaller boats, and Congress taking note of its peculiar hazards, passed the Motorboat Act of 1940, c. 155, 54 Stat. 163, 46 U.S.C.A. § 526 et seq. This latter statute made broad provisions defining and classifying motorboats, and prescribed standards of safety, according to size, construction and use, emphasizing particularly precautions to prevent explosions and fires resulting from accumulation of fuel vapors in the bilges of such vessels,[3] and providing penalties for violation of said Act generally.[4]

Returning now to the terms of release in the rental contract, while the rule that one who signs a document without reading it, cannot, in every day transactions, be heard to plead ignorance of its provisions, the conscience of the chancellor, as it is some time said, experiences a feeling of revulsion, when well recognized reasons, such as the provisions for limitation in the Harter Act, as well as decisions construing private contracts of affreightment, are sought to be taken advantage of by one party to a contract to escape responsibility for hidden defects and negligence which seriously endanger the life and limb of human beings. This accounts for the rule of strict construction in dealing with contracts prepared by those in public business, such as common carriers, seeking to relieve themselves from liability for their own negligence in these so-called private agreements. Thomas v. Atlantic Coast Line R. Co., 5 Cir., 201 F.2d 167, and authorities therein cited.

■ This lease or rental contract of an 18 foot inboard motorboat has the lessee saying that within the few minutes required to designate the particular boat, sign the lease, pay the rental in advance and make a deposit to insure return of the boat and its equipment in the same condition as when received, he had "examined the boat and found it in excellent condition with complete Coast Guard approval and required equipment * * ." The circumstances of the leasing as revealed by the testimony makes it clear that not only was no such inspection made or the provision therefor brought to the attention of appellants, but that it was impossible for the leaking condition of the gas tank to be discovered without removing the flooring or cover in the bottom of the boat in a manner to expose the bottom of the tank itself. In such circumstances, we hold that, in order to be relieved from the uniform liability for unseaworthiness, if it can be done at all, it was necessary for that release to be spelled out so as to at least bring it to the attention of the lessee and it could not be escaped by the general terms used in the fifth paragraph of the quoted provisions of that contract in

---

3. Sec. 526j, Tit. 46 U.S.C.A.:

"Every such motorboat and every such vessel, except open boats, using as fuel any liquid of a volatile nature, shall be provided with such means as may be prescribed by regulations of the Commandant of the Coast Guard *for properly and efficiently ventilating the bilges of the engine and fuel tank compartments so as to remove any explosive or inflammable gases: Provided,* That this section shall apply only to such motorboats or vessels, the construction or decking over of which is commenced subsequent to April 25, 1940." (Emphasis supplied.) Tit. 46 U.S.C.A. § 526o.

4. *"If any motorboat or vessel subject to any of the provisions of this subchapter is operated or navigated in violation of this subchapter or any regulation issued* thereunder, the owner or operator, either one or both of them, shall, in addition to any other penalty prescribed by law than that contained in Section 526m of this subchapter, be liable to a penalty of $100: *Provided,* That in the case of motorboats or vessels subject to the provisions of this subchapter carrying passengers for hire, a penalty of $200 shall be imposed on the owner or operator, either one or both of them, thereof for any violation of section 526e, 526f, or 526g of this subchapter or of any regulations pertaining thereto. For any penalty incurred under this section the motorboat or vessel shall be held liable and may be proceeded against by way of libel in the district court of any district in which said motorboat or vessel may be found. April 25, 1940, c. 155, § 16, 54 Stat. 166." (Emphasis added.)

footnote No. 2 *supra*. It nowhere releases the owner from unseaworthiness in express terms.

 The same reasoning applies to the contention of Appellee that the contract bound Rothman to indemnify it against its own negligence in placing this unseaworthy vessel in his hands, insofar as the other Appellants are concerned. As to their own rights to sue, no stipulation in the contract with Rothman to which they were not parties, could bind them to any attempted waiver of their rights to damages for the negligence of Appellee, if it were otherwise liable. Brady v. Roosevelt S.S. Co., 317 U.S. 575, 581, 63 S.Ct. 425, 87 L.Ed. 471 and authorities cited therein. Furthermore, they were not bare licensees, but invitees, due to the very method of conducting its business by appellee. 65 C.J.S. Negligence § 43(1), (3) (a), (b), (f) and (g), pp. 508, 510 et seq; Burdines, Inc. v. McConnell, 146 Fla. 512, 1 So.2d 462. A licensee is one in the premises or property of the owner by sufferance, for which the latter is liable only for wanton negligence, while an invitee is one there for the mutual benefit of himself and the owner. 65 C.J.S. Negligence, Subd. C. Invitees, p. 508 et seq. supra.

The record in this case is somewhat abbreviated, due first to the method of presenting it, and secondly, to some extent to rulings and voluntary statements of the Court. The facts as found show: That all of the plaintiffs went to Appellee's place of business together for a common purpose, leasing a motorboat for the use stated, and that it was done for the benefit of all, to the knowledge of the owner, who noted their names, as before stated, on the margin of the contract·as members of the party who would occupy it.

Greenberg's action in taking over the operation of the boat was not only known to but participated in by the owner through its agent or agents who were in charge and gave him instructions as to how to operate. The owner and those agents knew, or should have known, that in offering to lease to "all comers", there would be some without knowledge or previous experience. But in spite of water hazards and other dangerous conditions, the business was conducted exactly as if it had been a "You Drive It" automobile rental station. It, therefore, hardly lies within the mouth of Appellee to say the three plaintiffs, other than Bernard Rothman, were mere licensees or trespassers.

However, in view of the restrictive rulings of the Court below, it may be that further pertinent facts can be developed on another trial.

 2. As to the nature of Respondent's operations, this was not an isolated transaction in which only the lessor and lessee were concerned, and as to which the public generally had no interest, but was a continuing daily business in which the public generally was participating, at the invitation of Appellee, who owed reasonable care, including seaworthiness, both under maritime law and the statutes heretofore cited. Of course, the lessee and other members of the party were not relieved from the consequences of their own negligence, but the record in this case does not show and the Court below did not find such contributing fault. The negligence of Respondent in allowing this boat to get in the condition in which it was when leased was, as found below, the sole proximate cause of the accident. On the other hand, Appellants insofar as the record now shows, were wholly unaware of its condition, and could not by the use of ordinary care have discovered the leaking gas tank. This was a type of negligence which Appellee could not escape by the method used here in dealing with the public. See Fairfax Gas & Supply Co., 4 Cir., 151 F.2d 939.

We, therefore, think judgment below should be vacated, and the cause remanded for a new trial in the light of what is said herein. The judgment is set aside and a new trial ordered accordingly.